IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANYA GARNETT | : CIVIL ACTION NO. |
| 2745 MULFIELD STREET | : |
| PHILADELPHIA, PA 19153 | : |
| PLAINTIFF, | : JURY TRIAL DEMANDED |
| | : |
| V. | : |
| | : |
| DEFENDER ASSOCIATION OF | : |
| PHILADELPHIA | : |
| 1441 SANSOM STREET | : |
| PHLADELPHIA, PA 19102 | : |
| DEFENDANT. | : |

## COMPLAINT IN CIVIL ACTION

### JURISDICTION

1. This complaint is brought pursuant to the Americans with Disabilities Act

   (ADA), the Americans with Disabilities Act as Amended (ADEA), the Age

   Discrimination in Employment Act (ADEA), the Family and Medical Leave

   Act (FMLA) and the Pennsylvania Human Relations Act (PHRA).  Jurisdiction

   is appropriate pursuant to 28 U.S.C.  S 1331.  The plaintiff invokes the

   Federal Court's jurisdiction to hear and adjudicate state law claims

   pursuant to 28 U.S.C. S 1367.

### VENUE

1

2. Venue is appropriate in the United States District Court for the Eastern District of Pennsylvania because both parties are located in Pennsylvania, in Philadelphia, PA.

## PARTIES

3. The plaintiff, Tanya Garnett ("the plaintiff") is an adult resident and citizen of the Commonwealth of Pennsylvania, who resides at the address indicated in the caption above.

4. The defendant, Defender Association of Philadelphia ("the defendant" or "defendant") is a business entity that has a business office in the Commonwealth of Pennsylvania, in Philadelphia, and it has an address as indicated in the caption above.

## ADMINISTRATIVE AGENCY REQUIREMENTS

5. The plaintiff filed a charge of discrimination against the defendant with the United States Equal Employment Opportunity Commission (EEOC) at Charge No. 530-2025-08794, which was cross-filed with the Pennsylvania Human Relations Commission, for which the EEOC issued her a Right to Sue Letter dated July 22, 2026.

## FACTUAL ALLEGATIONS

2

6. The plaintiff is disabled based on **her medical** conditions, including her psychological conditions, which **include** having been diagnosed with Major Depressive Disorder, Depressive Disorder and Acute Stress Disorder.

7. The plaintiff's disabilities substantially affect(ed) her major life activities, including, but not limited to, her ability to focus and be attentive and her ability to tolerate undue stress without experiencing anxiety symptoms.

8. The effects of the plaintiff's disabilities are/were mitigated by ongoing therapy/counseling which she received during and after her employment with the defendant; the plaintiff was able to perform all of the essential duties of her employment with the defendant, with or without reasonable accommodations.

9. The defendant perceived the plaintiff to be disabled during at least the last several years of her employment, partly based on its review of FMLA applications, in which the plaintiff's physician described in summary, her psychological conditions (the plaintiff applied for and was approved for FML from approximately March 2023 until April 15, 2024, based on her Mother's health condition; she was again approved for it for her Father's terminal illness in April 2024, which required that she obtain therapy); the defendant's employees, including its managerial employees, also perceived

3

the plaintiff to be disabled based on negative stereotyping, based on the same information it gleaned, and upon information and belief, disseminated throughout the plaintiff's workplace.

10. Based on its review of the plaintiff's FMLA applications, including writings from the plaintiff's physician, the defendant incorrectly formed an opinion that the plaintiff was unable to work, which was proven incorrect, because the plaintiff continued working without any reasonable accommodation after such writing, and did not even request the physician's accommodation recommendation, that she be allowed to take a few days off periodically to address her mental health.

11. Rather, the plaintiff worked steadily after her last FMLA application, and she satisfactorily performed all of her duties.

12. At all times during her employment for the defendant, the plaintiff performed all of her duties in no less that a satisfactory manner.

13. The plaintiff began her employment with the defendant on/around July 20, 2010 – she held the position of "File Clerk 3".

14. Despite the fact that the plaintiff performed her duties satisfactorily, in/around 2022, her supervisor at that time and some of her co-workers began to harass her, including by micromanaging her work, monitoring her

4

comings and goings in a manner that was not done for her work peers, and upon reasonable information and belief, falsely gossiping about her in the workplace.; the plaintiff observed these actions, and she reported them to the defendant's management, which failed to properly investigate her allegations, and improperly concluded that the plaintiff had created some form of a hostile work environment, when it knew she had done nothing to do so; as a result of its false findings, the defendant transferred the plaintiff to another unit in 2022, and upon information and belief, the supervisor in question did not face any repercussions.

15. Despite obtaining the plaintiff's physician's FMLA writings, requesting that the plaintiff be allowed to take 1-2 days off, as needed, if she was experiencing debilitating depression, the defendant never engaged in an interactive process with the plaintiff or her physician to address this request for a reasonable accommodation; as stated above, to her recollection, the plaintiff did not request to take off work for her depression, after her physician's request in/around April 2024.

16. The defendant knew, from at least around April 2024, that the plaintiff required and was engaged in psychotherapy.

17. The plaintiff sought upward movement in her employment with the defendant, applying for multiple positions, however, it never promoted or hired her for any of those positions, including in 2024 and 2025; upon reasonable information and belief, those positions were filled by individuals who were/are neither disabled, perceived to be disabled and who were either under the age of forty, or who were considerably younger than the plaintiff.

18. The plaintiff was born on June 20, 1968, and she is currently 58 years old.

19. Many members of the plaintiff's management team were considerably younger than she was.

20. From around 2023, until the plaintiff was terminated from her employment on a false basis on/around April 30, 2025, the defendant also fired a series of employees who were well over the age of forty, who were satisfactorily performing their jobs – they were fired for specious reasons, and were replaced by persons either under the age of forty or who were considerably younger than them.

21. In February 2024, the plaintiff applied for the position of "Administrative Assistant" in the defendant's Special Litigation Unit, for which she was well-qualified for; however, the defendant externally filled/hired a person for

that position who was considerably **younger** than the plaintiff, who had not been an employee with the defendant, and who was not disabled.

22. The employee referred to in paragraph 21 above, left the position around a year later, and the position was vacant as of March 2025; the plaintiff again applied for the position, however the defendant denied her the position, rather it hired someone on/around April 7, 2025,  who had approximately 13 years less relevant experience than the plaintiff, who was considerably younger than the plaintiff and who was not disabled.

23. The plaintiff had spoken to Ms. Bevie Burke, the defendant's Human Resources manager, about not being able to get promoted by the defendant, essentially making a complaint to Ms. Burke.

24. In 2025, the plaintiff applied for a position of (Municipal Court – Pretrial) for which she was qualified, however she was denied that position in favor of someone who had approximately 13 years less relevant experience than the plaintiff had, was considerably younger than she was, and who was not disabled; that position was filled on/around April 7, 2025.

25. The plaintiff inquired with the defendant's management after around April 7, 2025, as to why she was not hired for the position of Unit Coordinator, to which the defendant's management personnel told her

7

that, although she had interviewed **well for** the position on April 4, 2025, that it was because the position **was for** a "fast paced" work environment; the plaintiff perceived these words to imply that based on her age and/or disability status, that the defendant subjectively believed that she would not be able to keep up with the work, which was false and had no basis in fact; that position was filled on/around April 12, 2025.

26. On/around April 9, 2025, Ms. Burke and other of the defendant's management personnel (Human Resources and others) summoned the plaintiff to Ms. Burke's office, when and where they proceeded to falsely accuse the plaintiff of misconduct, consisting of allegedly spreading a false rumor in the workplace that the plaintiff slandered the person who had been hired for the "Unit Coordinator position, a woman, by stating that she had obtained the position by sleeping around with an assistant supervisor, who was actually the plaintiff's supervisor; the managers refused the plaintiff's request to give her more specific information about the allegation, including when and where it allegedly occurred, and it refused to provide the plaintiff with the alleged proof it had, so that the plaintiff could defend against the false allegation.

27. The plaintiff vehemently denied the allegations to the defendant's management; the plaintiff was always properly subordinate with the defendant's management and supervisors, she had no reason to disparage any of them and would not do so, because it is out of her character to lie about anyone or intentionally spread falsity about anyone, let alone with someone she liked and respected, her supervisor.

28. The defendant's management also knew that it was highly outside of the plaintiff's character to spread malicious gossip at work, because she was quiet and kept to herself at work, and had actually complained in 2022 that others were potentially gossiping about her.

29. After she was fired, the plaintiff asked Mr. McFadden, her own supervisor if he knew anything about what she was alleged to have done, and he told the plaintiff, that he had not been contacted by the defendant's management regarding being the potential victim of malicious gossiping, and he reassured the plaintiff that he had no issue with her.

30. On April 11, 2025, the defendant approached the plaintiff and told her that she must leave the building immediately and escorted the plaintiff out of the building, informing her to report back to "HR" on April 14, 2025; Ms. Burke (HR) had told the plaintiff on August 10 2025, she would not be fired.

31. The plaintiff met with Human Resources (including Ms. Burke and Ms. Stokes, both of whom are either under the age of forty, believed to be in their thirties, or considerably younger than the plaintiff) on April 14, 2025 and April 15, 2025, at which time it informed her that she was being terminated from employment – the plaintiff was accompanied by a union representative; the plaintiff became emotionally distraught at being told she was going to be fired, and she had to leave the meeting because she was distraught, allowing her union representative to finish it on her behalf.

32. The defendant issued the plaintiff a termination letter dated April 15, 2025, in which it stated that she was being fired for spreading false rumors and bullying; the defendant knew that it was firing the plaintiff on a false basis, that she had not committed the offenses for which she was being fired, and that she had not bullied anyone; the defendant knew that someone else had actually spread the rumor that Ms. Brown and Mr. McFadden were having an affair, but it took no action against that person, who is not disabled, and likely considerably younger than the plaintiff; On August 10, 2025, Ms. Burke told the plaintiff she would not be fired.

33. The defendant is well aware that its employees gossip routinely, and it purposely had decided not to investigate what they have said or take any

10

disciplinary action against them, **including** multiple employees who are not disabled and who are considerably **young**er than the plaintiff (and who have not had to take FMLA **leave due** to their mental health).

34. Upon reasonable information **and belief**, false gossip at work is not an immediately terminable offense **under** the defendant's disciplinary policy, procedures and practices, particularly for a first offense.

35. In its termination letter, the defendant referenced the plaintiff's conduct in 2022, stating that she had created a hostile work environment there, which it knew was patently false – rather it was the plaintiff essentially complaining that she was the victim in essentially a hostile work environment (including that her supervisor threw paperwork at her, which contacted the plaintiff).

36. The defendant also falsely wrote that it had to fire the plaintiff because it could not allow her to remain in her position, that it was impossible for that to happen, and that it had no open positions that she could be transferred to – this was false, in fact, there were multiple open positions for which the plaintiff could be transferred to, for which she was qualified for.

37. The plaintiff was terminated from her employment on April 15, 2025, effective April 30, 2025; the plaintiff sought to preserve her employment by

contacting the defendant's highest- **level** management (Mr. Paul Hetznecker) and higher-level management, who refused to speak to her, and Ms. Hudson

38. In the termination letter, Ms. Burke wrote that the defendant had indications that the plaintiff's behavior may have been the result of "mental health issues", and she stated that the defendant wanted to give the plaintiff the opportunity to apply for short-term disability benefits; the defendant, Ms. Burke, attached a "UNUM" short-term disability claim form to the termination letter, allowing the plaintiff to apply for such benefits.

39. The plaintiff declined to apply for short-term disability benefits because she believed it would constitute an admission that she was disabled to point that she could not work, which was false – the plaintiff also reasonably believed that the defendant wanted her to apply for disability benefits because it would buttress its false conclusion that the plaintiff could not work, as well as buttress its false narrative that the plaintiff's mental health affected her conduct at work, causing her to commit misconduct.

40. The termination letter also stated that Ms. Burke had asked Ms. Hopf to open a disability claim on the plaintiff's behalf.

41. As of April 15, 2025, the plaintiff was suspended from work.  Pending termination from work.

42. The plaintiff was able to work consistently and successfully from April 2024, when she was diagnosed with major depression until she was suspended on April 15, 2025, to be terminated on April 30, 2025, which the defendant knew.

43. The defendant fired an employee in/around 2024, who was around 65 years old and had worked for the defendant for approximately 30 years (Ms. Lindsy) for specious reasons, replacing her with someone considerably younger than she was.

44. The defendant fired an employee who the plaintiff currently knows only as "J.T.", in late 2024; J.T. was in his fifties and had worked for the defendant for around 30 years.

45. In/around September 2024, the defendant fired an employee named Myra Clements, who was in her forties, and had worked for the defendant for approximately 25 years.

46. The defendant fired another woman who was in her forties in/around 2024, who had worked for the defendant for approximately 15 years.

47. The defendant fired an employee named Ms. Donnelly ( Unit Coordinator – Municipal Count) in/around 2024 or 2025, who had worked for it for around twenty years and was in her forties, for specious reasons; Ms. Donnelly was a clerk, and her position was vacant as of April 8, 2025, when the defendant posted it (showing that the defendant had falsely stated that there were no positions that the plaintiff could have been transferred to); the plaintiff was well qualified for the position that Ms. Donnelly had held.

48. The plaintiff's physician's writing in 2024, regarding her depression and potential need to take time off intermittently to deal with it, and receive treatment for it, were meant only as a potential request for reasonable accommodations as needed, not as a fitness for duty assessment, which the defendant knew; however, the defendant intentionally falsely construed what the plaintiff's physician wrote to the plaintiff's great detriment, and as part of a plan to rid itself of the plaintiff's employment, based on disability discrimination.

49. The defendant suspended and terminated the plaintiff's employment because she had applied for FMLA leave three times from 2023 until 2024, and again in 2024, and it perceived she may need to apply for it in the future, and did not wish to field further such applications – it retaliated

14

against the plaintiff for her use of the **FMLA**, by suspending her and firing her.

50. In intentionally falsely interpreting what the plaintiff's physician wrote on her FMLA paperwork, the defendant refused to attempt to obtain any clarification of what the physician wrote, rather it chose to use its intentional misinterpretation as a basis to suspend and fire the plaintiff.

51. In the process of investigating, disciplining and terminating the plaintiff's employment, the defendant deviated from its long standing process of informing and having the employee's supervisor present during such actions; additionally, the defendant refused to give the plaintiff exact details about what it concluded she had done, such as date, place, time and witnesses, so that she could properly defend against the allegations – this is unusual, in that the defendant is in the business of providing legal representation and criminal defense, in which it fights for its clients to receive due process (which it intentionally denied to the plaintiff) – the plaintiff believes that the defendant did not want Mr. McFadden involved in what happened to her because he would have given it true information about her performance and conduct, that would have militated against termination from employment.

52. As a result of the defendant's conduct summarized above, the plaintiff suffered severe emotional distress for which she has required ongoing mental health treatment; the defendant's conduct against her has exacerbated her mental health conditions.

53. As a result of the defendant's conduct, the plaintiff has suffered severe economic loss, including back pay, which has been extremely difficult to mitigate against based on her age.

### COUNT ONE – VIOLATIONS OF THE ADA AND ADAA

54. The plaintiff incorporates paragraphs 1-53 above as though fully set forth herein.

55. The defendant intentionally discriminated against the plaintiff based on her disability status and its perception that she was disabled, including that she suffers from several psychiatric conditions, including major depressive disorder.

56. The plaintiff sought to and did terminate the plaintiff's employment based on her disability status, as its perception that she was disabled.

57. The defendant denied the plaintiff several promotions based on disability discrimination.

58. The plaintiff suffered and she suffers severe emotional distress and severe economic loss as a result of the defendant's conduct.

59. The defendant's intentional conduct was willful, malicious and wanton as it was done for the purpose of harming the plaintiff based on her disability status, and the defendant's negative perceptions of the plaintiff as a result of such status.

WHEREFORE, the plaintiff requests judgment in her favor against the defendant, and she request the following relief:

     a.  Back pay;

     b.  Front pay;

     c.  Compensatory damages;

     d.  Punitive damages;

     e.  Reasonable attorney's fees and costs;

     f.  Any Other relief the Court deems appropriate.

### COUNT TWO – VIOLATIONS OF ADEA

60. The plaintiff incorporates paragraphs 1-59 above as though fully set forth herein.

61. The defendant intentionally discriminated against the plaintiff based on her age, late fifties, including by denying her promotions and positions for

which she applied for and was **well qualified** for, suspending her and terminating her employment based **on** her age, as described in more detail above.

62.  The defendant has a pattern and practice of discriminating against its older employees over the age of forty, over the age of fifty, and over the age of sixty, because it prefers employing persons under the age of forty or considerably younger than those ages; it arbitrarily gets rid of older employees, based on its perception that younger employees will perform better than older employees – its negative stereotype of older employees.

63. As a result of the defendant's conduct, the plaintiff suffered and suffers severe emotional distress, and she suffered and suffers severe economic harm.

64. The plaintiff was born on June 20, 1968, and is currently 58 years old.

65. The plaintiff applied for and was approved for by the defendant for FMLA leave on three separate occasions from 2023-2024, which were in part based on her need to obtain medical treatment for her depression, including that associated with the death of her father, and her mother's severe illness, which the defendant was aware of.

66. The d b efendant conduct against the plaintiff was done intentionally and maliciously.

WHEREFORE, the plaintiff requests judgment in her favor against the defendant, and she requests the following relief:

a. Back pay and lost benefits;

b. Front pay;

c. Liquidated damages;

d. Equitable relief;

e. Reasonable attorney's fees and costs;

f. Any other relief the Court deems appropriate.

## COUNT THREE – VIOLATIONS OF THE FMLA

67. The plaintiff incorporates paragraphs 1-66 above as though fully set forth herein.

68. The defendant intentionally retaliated against the plaintiff for exercising her right to apply for and to receive family medical leave, including twice in 2024, within two years of the filing of this complaint; this was done by suspending and firing the plaintiff on a knowingly false basis, because the defendant believed that it would have to potentially honor future request

for FMLA leave based on the plaintiff's mental health, which was described by her physician in her certifications for FMLA for the plaintiff.

WHEREFORE, the plaintiff requests judgment in her favor against the defendant and she requests the following relief:

a. Back pay and the value of lost benefits:

b. Front pay:

c.  Liquidated damages;

d. Equitable relief:

e. Reasonable attorney's fees and costs;

f.  Any other relief the Court deems appropriate.

### COUNT FOURS – VIOLATIONS OF THE PHRA

69. The plaintiff incorporates paragraphs 1-68 above as though fully set forth herein.

70. The defendant violated the PHRA by intentionally discriminating against the plaintiff based on her disability status and based on her age as set forth above.

71. The plaintiff suffered and she suffers severe emotional distress and economic harm from the defendant's conduct against her.

WHEREFORE, the plaintiff requests judgment in her favor against the defendant and she requests the following relief:

a. Back pay;

b. Front pay;

c. Compensatory damages;

d. Equitable relief;

e. Reasonable attorney's fees and costs;

f. Any other relief the Court deems appropriate.

Respectfully submitted,


/s/ Reginald Allen, Esquire